IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUCE LEVINE, et al., | : |
| Plaintiffs, | : CIVIL ACTION |
| | : NO. 09-842 |
| v. | : |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | : |
| Defendant. | : |

## MEMORANDUM

Slomsky, J.                                                                                                         June 18, 2010

Currently before the Court is Defendant First American Title Insurance Company's Motion to Stay Proceedings Pending a Pennsylvania Supreme Court decision in <u>White v. Conestoga Title Ins. Co.</u>, 30 EAP 2010 (Pa.) (Doc. No. 49). On June 7, 2010, Plaintiffs filed a Response in Opposition to the Motion to Stay (Doc. No. 51). On June 10, 2010, Defendant filed a Reply in Support of the Motion (Doc. No. 52). Additionally, Plaintiff filed a Notice of Subsequent Authority (Doc. No. 53) and a Motion For Leave to File a Sur-Reply (Doc. No. 54). Defendant filed a Response in Opposition to the Motion For Leave to File a Sur-Reply (Doc. No. 55). For the reasons that follow, the Court will grant Defendant's Motion to Stay.

### I.  BACKGROUND

####   A.  The Court's January 14, 2010 Opinion

This case arises from an alleged fraudulent scheme in which Defendant First American Title Insurance Company ("First American"), through various title agents, misrepresented the amount of

money due and owing for title insurance.[1] The crux of Plaintiffs' allegations is that Defendant overcharged thousands of Pennsylvania homeowners who purchased title insurance by charging a default "basic" rate of insurance rather than a special discounted "reissue" or "refinance" rate, which applied to the kind of title insurance required of a homeowner as part of a mortgage transaction. Through this alleged scheme, Defendant received considerable revenue to which it was not entitled.

Plaintiffs allege that Defendant engaged in a scheme as part of an ongoing racketeering enterprise in violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (2000) ("RICO"). Additionally, Plaintiffs claim Defendant employed unfair or deceptive acts prohibited by the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, *et seq*. ("UTPCPL"). Plaintiffs also assert claims of fraudulent misrepresentation, negligence, and unjust enrichment, which stem from the RICO and UTPCPL counts.

On January 14, 2010, the Court issued an Order and Opinion denying Defendant's Motion to Dismiss (Doc. No. 37). As a threshold matter in the Motion to Dismiss, Defendant argued that the Court lacked subject matter jurisdiction over this case because § 910-44(b) of the Pennsylvania Title Insurance Companies Act, 40 P.S. § 910, *et seq*. (1999) ("TICA"), provides an exclusive statutory remedy which must be pursued first by any person aggrieved by the application of the title

---

[1] Also before this Court are two related cases, <u>Coleman v. Commonwealth Land Title Ins. Co.</u>, Civil Action No. 09-679, and <u>Schwartz v. Lawyers Title Ins. Co.</u>, Civil Action No. 09-841, which similar claims are made. Plaintiffs in all three cases are represented by the same counsel. The Court notes that defense counsel in <u>Levine</u> collaborated with defense counsel in the present case. The Court has issued three similar opinions in these cases, changing only the names of the parties in appropriate places. The Opinion issued by the Court on January 14, 2010 (Doc. No. 37) contains a comprehensive recitation of the facts that need not be repeated here.

insurer's rating system.[2] Citing recent developments in Pennsylvania appellate law, the Court disagreed with Defendant's argument and ruled that § 910-44(b) does not bar Plaintiffs from pursuing a private right of action before exhausting administrative remedies.

Specifically, the Court explained that in a diversity of citizenship jurisdiction case, the Court must apply the substantive law of Pennsylvania. Because the Pennsylvania Supreme Court had not yet determined whether § 910-44(b) creates an exclusive remedy that must be exhausted by Plaintiffs before filing a case, the Court was required to predict how the Supreme Court would rule on this issue.

On October 2, 2009, the Pennsylvania Superior Court decided White v. Conestoga Title Ins. Co., 982 A.2d 997 (Pa. Super. Ct. 2009), which addressed the same jurisdiction issue raised in the Motion to Dismiss. In White, the Superior Court reversed the trial court's dismissal of plaintiff's claim for failure to exhaust administrative remedies under § 910-44(b). As explained in more detail in the Court's January 14, 2010 Opinion, the Superior Court concluded that neither TICA nor the Unfair Insurance Practices Act, 40 P.S. § 1171.1, *et seq*. (1999), was intended to provide an exclusive administrative remedy. Consequently, this Court found that it had subject matter jurisdiction over the present case.

---

[2]§ 910-44(b) of TICA provides: Every rating organization and every title insurance company which makes its own rates shall provide, within this Commonwealth, reasonable means whereby any person aggrieved by the application of its rating system may be heard, in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating organization or title insurance company fails to grant or reject such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating organization or such title insurance company on such request may, within thirty days after written notice of such action, appeal to the commissioner, who, after a hearing held upon not less than ten days written notice to the appellant and to such rating organization or insurer, may affirm or reverse such action.

After finding that Plaintiffs stated a valid RICO claim to survive the Motion to Dismiss, the Court turned to the issue of whether the McCarran-Ferguson Act, 15 U.S.C. § 1012 (2009), pre-empted Plaintiffs' RICO claim. Defendant argued that applying federal law in this case would directly interfere with § 910-44(b) of TICA, a state insurance law which Defendant argued provides an exclusive administrative remedy when a party is overcharged for title insurance. The Court was not persuaded by Defendant's argument and explained: "[I]n light of the Pennsylvania Superior Court's White decision, the current TICA landscape is clear: § 910-44(b) does not create an exclusive administrative remedy which would preclude Plaintiffs from filing this private right of action in federal court. Accordingly, Plaintiffs' Amended Complaint presents no conflict with state law that is pre-empted by the McCarran-Ferguson Act." (Doc. No. 31, at 32).

B. Pennsylvania Supreme Court

On May 19, 2010, the Pennsylvania Supreme Court granted defendant Conestoga's Petition for Allowance of Appeal in White. The Order granting review recites the question presented as follows:

> In reversing the Common Pleas Court's dismissal of this action for lack of jurisdiction by reason of the administrative remedy provided by the TICA at 40 P.S. § 910-44(b), did the Superior Court err by holding that the statutory and decisional rule that adequate administrative remedies are exclusive does not apply to consumer class actions?

Upon the Pennsylvania Supreme Court's issuance of this Order granting review, Defendant filed forthwith the Motion to Stay currently before this Court.

## II. STANDARD OF REVIEW

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 737 (3d Cir. 1983) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936)); see also Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985). Courts have broad power to stay proceedings and consider the following factors in determining whether a stay is warranted: (1) whether a stay would unduly prejudice or present a clear tactical advantage to the nonmovant; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. See United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del. 1991). The party seeking the stay must demonstrate a "clear case of hardship or inequity" if there is "even a fair possibility" that a stay will cause harm to the nonmoving party. Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1075-76 (3d Cir. 1983) (quoting Landis, 299 U.S. at 255). "A federal court may on extremely rare occasions stay its proceedings and defer to a concurrent state case on grounds of sound judicial administration." Praxis Props., Inc. v. Colonial Sav. Bank, 947 F.2d 49, 55 n.6 (3d Cir. 1991) (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

## III. DISCUSSION

Defendant argues that if the Pennsylvania Supreme Court reverses the Superior Court decision in White, all state law claims here must be dismissed for lack of subject matter jurisdiction. In other words, a reversal of White would require Plaintiffs to exhaust administrative remedies before filing a case in court on the state law claims, i.e., the UTPCPL, misrepresentation, negligence,

5

and unjust enrichment claims. On this point, Plaintiffs apparently do not disagree. However, the question remains as to whether a definitive decision by the Pennsylvania Supreme Court in White will apply in full force to the RICO claims in this case.

In 1945, Congress enacted the McCarran-Ferguson Act to "preclude[] application of a federal statute in face of state law 'enacted...for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supercede' the State's law." Humana Inc. v. Forsyth, 525 U.S. 299, 307 (1999) (citing Dep't of Treasury v. Fabe, 508 U.S. 491, 501 (1993).

Section 1 of the Act, codified at 15 U.S.C. § 1011, provides as follows:

> The Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

Section 2 of the Act, codified at 15 U.S.C. § 1012, provides as follows:

> (a) State regulation. The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
>
> (b) Federal regulation. No Act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance.

Put simply, under McCarran-Ferguson, a federal statute is pre-empted if: (1) the statute does not relate specifically to insurance; (2) the acts challenged under the statute constitute the "business of insurance"; (3) the state has enacted laws which regulate the challenged acts; and (4) the state laws would be "invalidate[d], impaired, or supercede[d]" by the application of the federal statute. 15

U.S.C. § 1012; see Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 166 (3d Cir. 2001).

As to the first prong of the pre-emption test, neither party argues that RICO specifically relates to insurance. "Indeed, virtually every court considering this issue has held that RICO is not a federal statute exempt from the McCarran-Ferguson Act." Sabo v. Metro. Life Ins. Co., 137 F.3d 185, 192 (3d Cir. 1998). Similarly, the parties do not dispute that prongs two and three fall in favor of pre-emption. Rather, each party's argument hinges on the fourth prong: whether an application of RICO in the instant case would "invalidate, impair, or supercede" state law.

In Weiss v. First Unum Life Ins. Co., the Third Circuit reflected on Sabo and explained that:

> We reasoned that "invalidate, impair, or supercede" included both the situation where federal law was in "direct conflict" with the state scheme, and the situation where federal law would frustrate state policy....However, the absence of direct conflict or frustration did not end the inquiry; a violation of Section 2(b) could also be shown through intentionally divergent policies or *evidence of a desire for exclusive administrative enforcement*.

482 F.3d 254, 259 (3d Cir. 2007) (emphasis added).

In construing the term "impair," the United States Supreme Court explained that "[w]hen federal law is applied in aid or enhancement of state regulation, and does not frustrate any declared state policy or disturb the State's administrative regime, the McCarran-Ferguson Act does not bar the federal action." Humana, 525 U.S. at 303. Applying simple logic to that statement, this Court infers that a federal law that does frustrate state policy or does disturb the State's administrative regime would be barred by McCarran-Ferguson. Defendant argues that this is the precise scenario at issue here. If the Supreme Court rules that TICA provides an exclusive remedy that must be exhausted before a plaintiff can file a case in court, then allowing Plaintiffs here to proceed on the RICO claim may disturb Pennsylvania's administrative regime and, inevitably, impair a state law.

7

At the heart of the contrast between the trio of controlling Third Circuit decisions (Sabo, Highmark, Weiss) and the present case is the difference between a statute that provides for no private right of action and a statute that provides for an exclusive administrative remedy.

In Sabo, for example, the Third Circuit "juxtapose[d] RICO with [UIPA,] a specific state law enacted for the purpose of regulating the insurance business." 137 F.3d at 192. The court explained that the conflict between RICO and UIPA was that RICO "grants a private cause of action to any person injured as a result of a pattern of racketeering activity" and UIPA "does not allow private causes of action." Id. Accordingly, the court held that "[w]here a state law or regulation is silent as to remedy, or does not provide a private cause of action, federal regulation will not be preempted." Id. at 193. The court explained further that "[w]e find no indication, through legislative intent or judicial interpretation, that Pennsylvania's non-recognition of a private remedy under the UIPA represents a reasoned state policy or *exclusive administrative enforcement* or that the vindication of UIPA norms should be limited or rare." Id. at 195 (emphasis added).[3]

---

[3]Similarly, in Highmark, a trademark case involving McCarran-Ferguson, the Third Circuit again discussed the interplay between RICO and UIPA. The court explained that "Pennsylvania's allowance of private actions...to proceed casts doubt upon the UIPA's exclusivity." 276 F.3d at 168. The court further explained that because UIPA did not provide an exclusive administrative remedy, the court in Sabo was correct in allowing the federal RICO claim to proceed. Id. The court did not, however, specifically address how it would rule if UIPA mandated an exclusive administrative remedy. Instead, the court merely concluded that "[t]he UIPA itself, *in light of its non-exclusive nature*, does not provide a basis for the Court to determine if different federal and state remedies can be a basis for preclusion under the McCarran Act." Id. at 170 (emphasis added). In Weiss, the Third Circuit commented on the Highmark decision and explained that in Highmark, "[t]he balance of these factors confirmed that the *state insurance scheme was not intended to be exclusive, that the allowance of the Lanham Act claim would not frustrate any state policy, nor would the Lanham Act interfere with the administrative scheme*." 482 F.3d at 261 (emphasis added). Thus, in light of UIPA's non-exclusivity, the court concluded that the Lanham Act did not "invalidate, impair, or supercede" UIPA and allowed the federal claim to proceed.

Here, the case is not one where the relevant statute is silent as to remedy. Rather, if the Supreme Court rules that § 910-44(b) of TICA creates an exclusive remedy that must be exhausted before a case is filed in court, then we have clear indication through judicial interpretation that Pennsylvania desires exclusive administrative enforcement in these cases. Plaintiffs' RICO claim arises from the statutory framework created by TICA, which mandates that title insurers file rates with the Department of Insurance and only charge those rates that are approved. As such, allowing a RICO claim stemming from allegations of a fraudulent title insurance scheme to proceed in federal court may impair state law in violation of McCarran-Ferguson.

The present case is most analogous to Saunders v. Farmers Ins. Exch., an 8th Circuit Court of Appeals decision which held that a Fair Housing Act challenge to insurance rates approved by the State Insurance Commissioner was barred by McCarran-Ferguson because it would impair the exclusive authority of the Insurance Commissioner to set rates. 537 F.3d 961, 966-69 (8th Cir. 2008). In that case, the court described Missouri's insurance regulatory scheme as follows:

> [A]ggrieved insureds must seek relief from the Director of Insurance, who has the exclusive authority to conduct an administrative hearing, or to commence an action in state court to remedy an insurer violation and the insured's financial injury. By mandating an exclusively administrative remedy, Missouri law preserves the agency's primary authority to determine whether rates are excessive or unfairly discriminatory, § 379.318(4), subject only to judicial review for arbitrary and capricious agency action. Even if the same legal

---

In Weiss, the Third Circuit once again addressed a statute (the New Jersey Insurance Trade Practices Act) that involved no private remedy, rather than a statute that involved an exclusive administrative remedy. 482 F.3d at 264. There, the court found no pre-emption of the RICO claim because RICO would not "disturb or interfere with New Jersey's state insurance regime." Id. at 269. Importantly, the court noted that "[i]ndeed, in light of the common law and statutory remedies available, we do not read New Jersey's scheme as intended to be exclusive." Id. Accordingly, if RICO disturbs a state's scheme intended to be exclusive, there may be preclusion under McCarran-Ferguson.

9

> standards apply under federal and state law (which would not be the case), transferring their administration from state agency to federal court "obviously would interfere with the administration of the state law. The states are not indifferent to who enforces their laws."

537 F.3d at 968 (quotation omitted).

The court in Saunders held that "Missouri law creates an administrative regime that would be frustrated and interfered with" if a claim brought under the Fair Housing Act would proceed in federal court. Id. Consequently, the court applied McCarran-Ferguson to pre-empt a challenge that would impair Missouri state insurance law by disturbing its comprehensive administrative regime.

The case presently before the Court may involve a similar mandatory, exclusive procedure under state law. It appears that if the Supreme Court holds that § 910-44(b) provides an exclusive administrative remedy, then McCarran-Ferguson may bar the RICO claims because the federal statute will impair state law by disturbing the state's administrative regime. Conversely, if the Supreme Court holds that the remedy is not exclusive, then McCarran-Ferguson will not apply.[4]

## IV. CONCLUSION

In view of holdings in Humana, Sabo, Highmark, and Weiss, the Court is persuaded that this case represents the rare occasion where a stay is warranted.[5] A stay will help to simplify a critical

---

[4] Once a final judgment is entered by the Pennsylvania Supreme Court in White, either party may request that this case be returned to the active docket of this Court. If and when the matter is returned to the active docket, this Court will hold a status conference to determine how to proceed with this matter. At that point, the Court will make a final decision as to whether McCarran-Ferguson would pre-empt the RICO claim from going forward.

[5] In view of the White appeal, a stay has been granted in other cases involving claims of overcharging for title insurance. Although none of these cases include a RICO claim, it appears that these courts are also concerned with the question of subject matter jurisdiction. The cases stayed are: McDuffie v. Stewart Title Ins. Co., Civil Action No. 09-2414 (3d Cir.); Amato v. United General Title Ins. Co., Civil Action No. 09-2416 (3d Cir.); Cahall v. Fidelity Nat'l Title Ins. Co., E.D.Pa. Civil Action No. 09-0011 (Jones, J.); Abel v. Ticor Title Ins. Co., E.D.Pa. Civil

10

issue involving subject matter jurisdiction. Moreover, extensive discovery has not been taken in this complex case in which Plaintiffs seek class action certification pursuant to Fed. R. Civ. P. 23. In addition, no trial date has been set and it appears that the documents sought by Plaintiffs in discovery will be available for production after the Pennsylvania Supreme Court decides the White case.

In the interests of comity, and considering that the Supreme Court's decision may directly affect the threshold question of subject matter jurisdiction, the prudent course of action is to stay the proceedings until the Supreme Court rules in White v. Conestoga Title Ins. Co. Accordingly, Defendant's Motion to Stay (Doc. No. 49) will be granted. An appropriate Order follows.

---

Action No. 06-4630 (Fullam, J.); O'Day v. Ticor Title Ins. Co., E.D.Pa. Civil Action No. 06-4660 (Fullam, J.); Markocki v. Old Republic Nat'l Title Ins. Co., E.D.Pa. Civil Action No. 06-2422 (Tucker, J.); Alberton v. Commonwealth Land Title Ins. Co., E.D.Pa. Civil Action No. 06-3755 (Robreno, J.). The Court is aware of only one case where a Motion to Stay has not been granted. See Cohen v. Chicago Title Ins. Co., E.D.Pa. Civil Action No. 06-873 (Sanchez, J.).